JAMES F. STAUTON ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN
OF MADISON ET AL.
(SC 17107)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued March 24—officially released September 21, 2004

*Charles R. Andres*, with whom, on the brief, was *Ben A. Solnit*, for the appellants (plaintiff James A. Torres et al.).

*Michael A. Zizka*, for the appellee (named defendant).

*Linda L. Morkan*, with whom were *Thomas P. Cody* and, on the brief, *Joey Lee Miranda*, for the appellee (defendant Leyland Development, LLC).

*Opinion*

SULLIVAN, C. J. The plaintiffs, James Torres, Vita Marie Torres, James Bowe and Elizabeth Bowe,[1] appeal from the decision of the trial court dismissing their appeal and upholding the decision of the named defendant, the planning and zoning commission of the town of Madison (commission). The commission approved an amendment to the town zoning regulations that per-

---

[1] The trial court dismissed the claims of the plaintiffs James F. Stauton and Ellen Lowe on the ground that they had not established classical or statutory aggrievement under General Statutes § 8-8 (a) (1). Stauton and Lowe, therefore, are not parties to this appeal. The plaintiffs Peter Sakalowsky, John Dean and Philip Costello, Jr., have withdrawn from the appeal. The trial court dismissed the claims of the plaintiffs William Atkinson and Laverne Atkinson on the basis of the defendants' uncontested motion to strike.

mitted, by site specific special exception, the construction of a planned adult community on a parcel of land known as the Griswold Airport. The defendant Leyland Development, LLC (Leyland Development) is the contract purchaser of the property. The plaintiffs claim that the trial court improperly concluded that the amendment to the town zoning regulations did not violate the uniformity requirement in General Statutes § 8-2.[2] The defendants claim that the trial court improperly concluded that the plaintiffs were statutorily aggrieved under General Statutes § 8-8 (a) (1)[3] because they owned property within the same underlying zone as the Griswold Airport property. We conclude that the plaintiffs were not statutorily aggrieved and that, therefore, the trial court did not have subject matter jurisdiction over the plaintiffs' appeal. Consequently, we need not reach the plaintiffs' claim.

[2] General Statutes § 8-2 (a) provides in relevant part: "The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes . . . . All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . ."

[3] General Statutes § 8-8 (a) (1) provides: " 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

The relevant facts are as follows. The Griswold Airport consists of 42.5 acres and is located south of Route 1 in the town of Madison (town). The property is located in the R-1, R-2 (single-family residence) and L1 (light industrial) zoning districts.[4] Maryann Griswold and Griswold Airport, Inc., own the property and Leyland Development is the contract purchaser of the property. Leyland Development petitioned the commission to amend the town zoning regulations by site specific special exception[5] (site specific zoning amendment) in order to permit the construction of a planned adult community on the site. The planned adult community was to consist of housing facilities intended for and operated by persons fifty-five years of age and older. The proposed amendment called for a maximum of 260 dwelling units, consisting of 140 units contained within multi-family buildings, a minimum of 70 single-family detached residences and a minimum of 40 single-family attached residences.

The plaintiffs own property within the R-2 zone in the town. Although a portion of the Griswold Airport is also located within the R-2 zone, the plaintiffs' property does not abut the Griswold Airport and is not within a 100 foot radius of any portion of the Griswold Airport.

The commission held public hearings regarding Leyland Development's proposed site specific zoning

[4] Additionally, the property is subject to a previously enacted site specific special exception permitting "[b]usiness and professional offices including accessory uses customary with and incidental to such uses, to include book storage and distribution."

[5] The town employs a unique method of site specific special exception zoning. Using this method, the town amends the regulations governing a zone and simultaneously applies the amendments to a particular parcel of land. Although the regulations for a particular zone have changed, those changes only apply to a specific parcel of land explicitly identified in the zoning amendment. After the zoning amendment has been adopted, the owner of the identified parcel can apply for a special permit to operate the land consistent with the newly permitted use.

amendment on February 15, March 15 and April 19, 2001. The proposal caused intense public opposition arising from concerns that the development would pose a threat to wildlife and open space. On August 2, 2001, after several changes to the proposal, the commission approved the site specific amendment to the zoning regulations to permit the planned adult community on the Griswold Airport site by a five to four vote. The amendment applied solely to the Griswold Airport. The commission gave numerous reasons in support of its decision, including that the project would have minimal impact on the environment and that it was consistent with the town's development plan.

The plaintiffs appealed to the trial court pursuant to General Statutes §§ 8-8 (b) and 8-9,[6] claiming, inter alia, that the commission's decision violated the uniformity provisions of § 8-2. The trial court determined that: (1) although the plaintiffs were not classically aggrieved by the commission's decision, they were statutorily aggrieved within the meaning of § 8-8 (a) (1) as owners of real property within the R-2 zone; and (2) the amendment did not violate the uniformity provision embodied in § 8-2 and was not contrary to the town's comprehensive zoning plan. The plaintiffs petitioned the Appellate Court for certification to appeal. The Appellate Court granted the petition and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

As an initial matter, the defendants claim that the plaintiffs lacked standing to appeal under § 8-8 (a) (1)

---

[6] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

General Statutes § 8-9 provides: "Appeals from zoning commissions and planning and zoning commissions may be taken to the Superior Court and, upon certification for review, to the Appellate Court in the manner provided in section 8-8."

because they were not statutorily aggrieved by the commission's decision. The defendants contend that, because the plaintiffs' property does not abut the Griswold Airport and is not located within a 100 foot radius of any portion of the Griswold Airport, the plaintiffs cannot be statutorily aggrieved by the commission's decision. We agree.

"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. . . . A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." (Citations omitted; internal quotation marks omitted.) *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 192, 676 A.2d 831 (1996).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim

injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves,* 262 Conn. 480, 486–87, 815 A.2d 1188 (2003).

Whether the plaintiffs are statutorily aggrieved under § 8-8 (a) (1) is a question of statutory interpretation over which our review is plenary. *Carmel Hollow Associates Ltd. Partnership* v. *Bethlehem,* 269 Conn. 120, 129, 848 A.2d 451 (2004).[7] We begin our analysis with the language of the statute. Section 8-8 (a) (1) provides that an " 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." The question before us is whether the phrase "land involved in the decision of the board" means the discrete property that is subject to the site specific zoning amendment or the entire zone in which the property is located.

Our decision in *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 560 A.2d 975 (1989), is instructive. In that case, the defendant received a special exception from the Salem planning and zoning commission that allowed excavation on a 3.8 acre parcel located deep within his 110 acre tract of land. Id., 663–64. The plaintiffs appealed from the commission's decision, claiming statutory aggrievement because their property abutted or was within a 100 foot radius of the

[7] "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1. Because it is not clear on the face of the statute whether the phrase "land involved in the decision of the board," in an appeal from a site specific zoning amendment, refers to the entire zone or the particular parcel named in the amendment, the statutory language of § 8-8 (a) (1) is not plain and unambiguous. Therefore, we are not limited to the text of the statute in discerning its meaning.

defendant's 110 acre tract of land. Id., 664. This court was presented with the question of whether the phrase "land involved" referred to the entire tract of land owned by the special exception applicant or whether it referred to the discrete piece of land containing the activity considered in the commission's decision. Id., 663. After finding the language of the statute ambiguous and the legislative history not instructive,[8] we "look[ed] to the effect of the changes in and of themselves to indicate legislative intent." Id., 668.

We observed that changes to the statutory aggrievement provision in § 8-8 (a) (1) "reveal a significant liberalization of the law of aggrievement concerning those who can appeal to court from a decision of a zoning agency" because such changes relieved a limited class of plaintiffs from meeting the stringent standard for classical aggrievement. Id. We concluded that "the legislature presumed as a matter of common knowledge that persons owning property within *close proximity* to a *projected zoning action* would be sufficiently affected by the decision of a zoning agency to be entitled to appeal that decision to court. Giving such a right to the *narrow* class of abutters and those owning property within 100 feet of the land involved would not unduly enlarge the class of those entitled to appeal such a decision." (Emphasis added.) Id., 668–69. Noting the value of a bright line rule, we interpreted the phrase "land involved" to include the complete tract of land owned by the special exception applicant because such an interpretation would not unduly expand the class of statutorily aggrieved plaintiffs and would not likely produce the bizarre result that landowners located far from the proposed zoning action would gain the benefits of statutory standing. Id., 670.

---

[8] The legislative history of the provision is no more instructive in answering the question before us than it was in resolving the issue present in *Caltabiano*.

The plaintiffs argue that our conclusion in *Caltabiano* that the phrase "the land involved in the decision of the board"; General Statutes § 8-8 (a) (1); meant the entire *property* on which the affected *parcel* was located supports their interpretation that the phrase refers to the entire *zone* in which an affected *property* is located. The defendants counter that our decision in *Caltabiano* merely stands for the proposition that, when only a portion of a single property is affected by a decision, that portion should not be treated as a separate piece of land for purposes of § 8-8 (a) (1). They further argue that our reasoning in *Caltabiano* supports their interpretation of § 8-8. We agree with the defendants.

As *Caltabiano* instructs, we must interpret the phrase "land involved" in § 8-8 (a) (1) in light of the legislature's intent to relieve a narrow class of landowners who are presumptively affected by the zoning commission's adverse decision because of their close proximity to a projected zoning action from the arduous burden of proving classical aggrievement. If we were to interpret the phrase "land involved in the decision of the board" to mean the entire zone in which the land is located even when only one property located in the zone is affected by the challenged decision, the statutory right of appeal would no longer be limited to a narrow class of property owners, but would be available to all persons owning land within the zone. In the present case, such an interpretation would confer standing on all persons owning land within the R-1, R-2 and L1 zones, which constitute a large portion of the town. Moreover, if we were to adopt the plaintiffs' interpretation of the phrase "land involved," all landowners whose properties abut the R-1, R-2 or L1 zones or whose properties are within a 100 foot radius of the R-1, R-2 or L1 zones presumably would be statutorily aggrieved under § 8-8 (a) (1). This result would be inconsistent with the legislative pre-

sumption that a landowner's parcel is "sufficiently affected" by the proposed zoning action to confer standing without requiring the landowner to prove that he is adversely affected by the decision only when the property is in *close proximity* to the affected property. *Caltabiano* v. *Planning & Zoning Commission*, supra, 211 Conn. 668–69. Accordingly, we conclude that, when a zoning decision directly affects only a single property within a zone, the phrase "land involved in the decision of the board," as used in § 8-8 (a) (1), does not include the entire zone in which the affected property is located.

The plaintiffs assert, however, that their interpretation would not be inconsistent with the legislative intent because the site specific zoning amendment, though limited to the Griswold Airport property, affects the uses permitted in the R-2 zone and, therefore, affects all landowners within the zone. The plaintiffs principally rely on two decisions in support of this argument: *Timber Trails Corp.* v. *Planning & Zoning Commission*, 222 Conn. 374, 610 A.2d 617 (1992), and *Cole* v. *Planning & Zoning Commission*, 30 Conn. App. 511, 620 A.2d 1324 (1993).

In *Timber Trails Corp.*, the plaintiffs appealed from the Sherman planning and zoning commission's decision to amend its zoning regulations to increase the minimum lot size requirement in zone B from 40,000 square feet to 80,000 square feet and to make all zone A requirements applicable to zone B. *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 376. We noted that the plaintiffs "[a]s owners of land in zone B . . . are aggrieved parties. See General Statutes § 8-8 (b); *Fletcher* v. *Planning & Zoning Commission*, 158 Conn. 497, 502–503, 264 A.2d 566 (1969)." *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 376 n.3. It is unclear from our statement in *Timber Trails Corp.* whether we concluded that the plaintiffs were statutorily aggrieved, classically

aggrieved, or both. See *Harris* v. *Zoning Commission*, 259 Conn. 402, 413, 788 A.2d 1239 (2002) ("[a]lthough the question of aggrievement was not directly at issue [in *Timber Trails Corp.*], we noted in dicta that the plaintiffs had established both classical and statutory aggrievement"); *Lewis* v. *Planning & Zoning Commission*, 62 Conn. App. 284, 291 n.8, 771 A.2d 167 (2001) (reading *Timber Trails Corp.* as case establishing classical aggrievement, not statutory aggrievement). Because the facts of this case are distinguishable from the facts in *Timber Trails Corp.*, we need not resolve the issue.

In *Timber Trails Corp.*, the zone amendment applied to the entire zone. *Timber Trails Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 376. It was not, as in the present case, a site specific zoning amendment applicable only to one particular parcel of land. Furthermore, the zone change in *Timber Trails Corp.* directly affected the plaintiffs' ability to use and develop their property because the amendment increased the minimum lot size for their land from 40,000 square feet to 80,000 square feet. Id., 376–77. In the present case, the zone change specific to the Griswold Airport property did not in any way alter the plaintiffs' ability to use and develop their land. Thus, *Timber Trails Corp.* does not help them to establish statutory aggrievement.

The Appellate Court's holding in *Cole* v. *Planning & Zoning Commission*, supra, 30 Conn. App. 511, is similarly distinguishable. In *Cole*, the Cornwall planning and zoning commission amended its regulations "governing the issuance of a special exception permit and site plan approval for the establishment of a commercial sawmill in the R-3 and R-5 residential zones." Id., 512. The Appellate Court determined that the plaintiffs "as owners of land within either the R-3 zone or the R-5 zone, the zones to which the amendment pertains, [were] aggrieved parties by virtue of General Statutes § 8-8 (a)

(1)." Id., 514. In *Cole*, the amendment pertained to the entirety of the R-3 and R-5 zones because the process for obtaining a special exception permit for a commercial sawmill was amended for *all* landowners within those zones. Id., 512. Thus, the amendment changed the manner in which the plaintiffs could use their land and, as such, the Appellate Court held that the plaintiffs were statutorily aggrieved. See id., 515; see also *Lewis* v. *Planning & Zoning Commission*, supra, 62 Conn. App. 290, 298 (plaintiffs, who owned land subject to change in subdivision regulations so that number of subdividable lots on their land had been reduced, were both classically and statutorily aggrieved by commission's decision). Again, however, the site specific zoning amendment at issue in this case applies only to the Griswold Airport and has no affect on the manner in which the plaintiffs can use or develop their land.[9] Accordingly, we reject this claim.

The plaintiffs finally argue that the commission's zoning amendment affected the entire R-2 zone and the uses allowed in that zone, even though the amendment was textually limited to the Griswold Airport, because the commission was acting in a legislative capacity when it approved the zoning amendment. The only authority that the plaintiffs cite in support of this proposition is *Hanson* v. *Town Council*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV 93 0521154S (May 2, 1994). In *Hanson*, the plaintiffs owned land abutting a floating "Planned Area Development Zone" that had been superimposed on an underlying zone. See *Sheridan* v. *Planning Board*, 159 Conn. 1, 16, 266 A.2d 396 (1969) ("A floating zone is a special detailed use district of undetermined location in which the proposed kind, size and form of structures

---

[9] We need not decide whether the plaintiffs would be statutorily aggrieved if, as *Cole* and *Lewis* suggest, the zoning amendment at issue was applicable to the entire R-2 zone.

must be preapproved. . . . [I]t has no defined boundaries and is said to 'float' over the entire area where it may eventually be established." [Citations omitted.]). The plaintiffs in *Hanson* sought to challenge the decision of the defendant town council granting an application to change the designated use of a specific property within the zone from office use to retail development and supermarket use. Each plaintiff owned property that was separated from the eighty acre planned area development zone by a public highway. Two plaintiffs were within 100 feet of the planned area development but were not within a 100 foot radius of the portion of the property for which the zone change was sought. The trial court noted that, "[a]n owner of land within a zone is an aggrieved party where the zoning authority changes the use or uses permitted within a zone." *Hanson* v. *Town Council*, supra, Superior Court, Docket No. CV 93 0521154S. The court further noted that "in the case of a floating zone . . . [m]ore control is retained by the zoning board because it is acting legislatively." Id. The court went on to state that "[a]lthough a departure from the original plan may be categorized as a change from one permitted use to another, similar to the concept of special permit, and not a change in the overall land use permitted for all sectors of the entire zone so as to allow a previously prohibited use to exist throughout the entire zone, yet the court determines that the applied for change from office to grocery store—retail is a sufficient departure from the original approved uses in the sector of this Planned Area Development to fall within the concept of a zone change having some effect upon the character of the zone, for the purposes of, but limited to the purposes of determining statutory aggrievement." Id. Relying on *Cole* v. *Planning & Zoning Commission*, supra, 30 Conn. App. 511, the court then determined that the plaintiffs had shown statutory aggrievement. *Hanson* v. *Town Council*, supra, Superior Court, Docket No. CV-93-0521154S.

We are not persuaded that the court in *Hanson* found aggrievement because the town's action was legislative rather than administrative in nature. Instead, the court appears to have been persuaded by the same argument made by the plaintiffs in the present case based on the reasoning of *Cole*, which we already have rejected. As noted, the plaintiffs have provided no other authority for the proposition that a legislative action that affects only a single property should be treated in a manner different from an administrative action that affects a single property for purposes of establishing aggrievement, and we cannot perceive why that should be the case. Accordingly, we reject this claim.

We conclude that the plaintiffs were not statutorily aggrieved by the commission's decision and, therefore, that the trial court lacked subject matter jurisdiction to entertain their appeal.

The form of the judgment is improper; it is set aside and the case is remanded to the trial court with direction to dismiss the appeal for lack of jurisdiction.

In this opinion the other justices concurred.