## MANUEL MOUTINHO ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF BRIDGEPORT ET AL.
### (SC 17558)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Argued February 9—officially released June 20, 2006

*Joseph A. Kubic*, with whom, on the brief, were *Stephen P. Wright* and *James R. Winkel*, for the appellants (plaintiffs).

*Barbara Brazzel-Massaro*, associate city attorney, for the appellee (named defendant).

*Opinion*

SULLIVAN, C. J. The plaintiffs, Manuel Moutinho and J.R.R.C. Associates (J.R.R.C.), appeal[1] from the judgment of the trial court dismissing for lack of subject matter jurisdiction their zoning appeal from the decision of the named defendant,[2] the planning and zoning commission of the city of Bridgeport (commission), denying certain applications filed by the plaintiffs. The plaintiffs claim that the trial court improperly concluded that Moutinho was not aggrieved by the commission's decision and that J.R.R.C. had no right to bring an appeal, despite the fact that it was statutorily aggrieved. We reverse the judgment of the trial court.

The record reveals the following undisputed factual and procedural background. In 1998, Moutinho applied to the commission for a special permit, site plan review, and coastal site plan review to construct a batch asphalt plant at 53–85 Seaview Avenue in Bridgeport. The applications identified Moutinho as a lessee of the property. When the applications were filed, the record owner of the property was a trust established for the benefit of four brothers; Anthony D. Julian, Raymond Julian, Dominick Julian, and Donald Julian; with Anthony Julian serving as trustee. Although the Julian brothers were not listed as applicants on the form Moutinho submitted to the commission, Raymond Julian had consented to the application by signing it on behalf of the trust. At the public hearing pertaining to the application, Moutinho's attorney also disclosed the brothers' names

---

[1] The Appellate Court granted the plaintiffs' petition for certification to appeal from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Brian Hariskevich, Annette Mathews and John Percell, who intervened in the underlying zoning matter pursuant to General Statutes § 22a-19, are also named as defendants in this action.

pursuant to General Statutes § 8-7c[3] to ensure that the commission did not have a conflict of interest with the beneficial owners of the property. The commission ultimately denied all three of Moutinho's applications, and Moutinho and Anthony Julian, as trustee, appealed from the commission's decision to the Superior Court. After the appeal was filed, the property was conveyed by the trust to J.R.R.C., a general partnership whose sole partners were Dominick Julian, Raymond Julian, and Anthony Julian. Thereafter, the trial court granted a motion to substitute J.R.R.C. as a plaintiff in place of Anthony Julian as trustee.

On appeal, Dominick Julian and Moutinho testified that there existed an oral agreement to enter into a long-term lease of the property if the asphalt plant were approved.[4] Moutinho testified that this agreement had existed since 1990. Dominick Julian testified that the property had remained vacant and that J.R.R.C. had not sold or leased it to any other party during the pendency of this appeal. After the first day of testimony, the trial court determined that J.R.R.C. was aggrieved by the commission's decision, but declined to decide at that time whether Moutinho was aggrieved and asked the parties to submit supplemental briefs on the issue.

[3] General Statutes § 8-7c provides: "Any person who makes an application to a planning commission, zoning commission or zoning board of appeals pertaining to real property, the record title to which is held by a trustee of an undisclosed trust, shall file with said application a sworn statement disclosing the name of the equitable owner of such real property or the beneficiary of the trust."

[4] It is difficult to discern from the record whether Moutinho's oral agreement was with the trust itself or with Dominick Julian. We conclude, however, that we need not resolve this ambiguity. The commission does not claim that Moutinho was not aggrieved because he contracted with someone who lacked authority to bind the trust. In addition, the trial court found that Moutinho had an oral agreement with the owner of the property. It did not find that his agreement was with only one of the Julian brothers, and we can discern no reason to disturb this finding of fact. See *State* v. *Skakel*, 276 Conn. 633, 721, 888 A.2d 985 (2006) (findings of fact overturned on appeal only if clearly erroneous).

Although the court found that Moutinho was not a lessee of the property, it also found that he had an oral agreement with the owner of the property to enter into a long-term lease agreement if the applications were approved. It concluded, however, that Moutinho was not aggrieved by the denial of the applications because his oral agreement with J.R.R.C. did not comply with the statute of frauds and, therefore, was unenforceable. The court further concluded that, although J.R.R.C., as the property owner, was aggrieved, it could not appeal from the commission's decision because it could not seek relief from rulings on applications that it did not make. The plaintiffs filed a motion to reargue, which the trial court denied. This appeal followed.

On appeal, the plaintiffs claim that because Moutinho was either a lessee or a licensee of the property, he was classically aggrieved by the commission's decision. They also claim that because J.R.R.C. was both statutorily aggrieved and classically aggrieved, it was entitled to appeal from the commission's decision. The commission claims that this court should affirm the trial court's judgment of dismissal with respect to J.R.R.C. on the alternate ground that J.R.R.C. was not aggrieved by the commission's decision. With respect to Moutinho, the commission claims that the trial court properly found that he was not aggrieved because his interest in the property is too attenuated to establish aggrievement. We agree with the plaintiffs.

Before we address the merits of the parties' claims, we briefly set forth the law governing aggrievement and the standard of review. "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." (Internal quotation marks omitted.) *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 157, 856 A.2d 400 (2004). "[I]n order to have standing to bring an administrative appeal, a person must be aggrieved."

(Internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals,* 266 Conn. 531, 538, 833 A.2d 883 (2003).

"Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) Id.

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission,* 275 Conn. 383, 391, 880 A.2d 865 (2005).

"Aggrievement presents a question of fact for the trial court. . . . The scope of review of a trial court's factual decision on appeal is limited to a determination of whether it is clearly erroneous in view of the evidence

and pleadings. . . . Conclusions are not erroneous unless they violate law, logic or reason or are inconsistent with the subordinate facts. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *LePage Homes, Inc.* v. *Planning & Zoning Commission*, 74 Conn. App. 340, 344–45, 812 A.2d 156 (2002).

I

Turning to the merits of the plaintiffs' claims, we first consider whether Moutinho was classically aggrieved by the commission's decision. In zoning appeals, "[t]his court has not set forth a precise standard that defines the required interest a nonowner must possess in order to become an aggrieved party . . . . Rather, we have held that the extent to which a party with an interest in the property other than that of an owner is aggrieved depends upon the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal an order." *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 93, 558 A.2d 646 (1989).

In *Primerica*, we addressed the question of whether a lessee could demonstrate a specific, personal and legal interest in the leased property and, therefore, be classically aggrieved by a zoning decision affecting the property. Id., 92–95. In that case, the plaintiff had constructed several buildings on a specially zoned parcel of land that it owned in the town of Greenwich. Id., 89. The regulations governing the parcel required occupancy by a single executive office and limited the number of employees per lot to twenty-five employees per

acre. Id. After a change in the plaintiff's business model resulted in underutilization of the facility, the plaintiff attempted to increase the property's value in order to put it up for sale by petitioning the commission to amend the regulations to eliminate the single occupancy requirement. Id., 90. The commission denied the plaintiff's petition, but, thereafter, pursuant to its staff's proposal, it amended the regulation to increase the number of occupants and reduce the permitted employee density. Id., 91–92. Under the amended regulation, the plaintiff's property could accommodate three occupants, but each occupant was permitted to have fewer employees. Id. The plaintiff appealed to the trial court both from the commission's decision to deny its petition and from the commission's subsequent amendment of the regulations. Id., 92. During the pendency of the appeal, the plaintiff sold the property, but leased 55 percent of the property for a ten year term and agreed to guarantee rent for five years with respect to the remainder of the building complex. Id., 93–94. The plaintiff also held a right of first refusal should the new owner sell the property and was the purchase money mortgagee of the property. Id., 94. The trial court concluded that the plaintiff was aggrieved and reversed the commission's amendment of the zoning regulations. Id., 87. The defendant then appealed to this court. Id., 87–88. Although the plaintiff no longer owned the property, we concluded that it had a sufficient interest in the property as lessee to be considered an aggrieved party.[5] Id., 94–95. It is clear, therefore, that a lessee may have a sufficient

[5] In support of this conclusion, we cited a number of cases in which we had allowed lessees to maintain appellate proceedings and therefore had concluded, implicitly, that lessees have sufficient interest in the leased property to be aggrieved by decisions affecting the property. See *Primerica* v. *Planning & Zoning Commission*, supra, 211 Conn. 94. Our sister states also have recognized that a lessee may have a significant enough interest in leased property to bring a zoning appeal. See, e.g., *Rodriguez* v. *Henderson*, 217 Ill. App. 3d 1024, 1036–37, 578 N.E.2d 57 (1991); *Ralston Purina Co.* v. *Zoning Board*, 64 R.I. 197, 199, 12 A.2d 219 (1940).

interest in leased property to be aggrieved by a zoning decision affecting that property. The question we must now address is whether a party who has an oral agreement to lease property after the fulfillment of a contingency may be aggrieved by a land use decision affecting the property.

Although this court previously has not considered this question, the Appellate Court's opinion in *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 370–71, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991), is instructive. In that case, one of the plaintiffs applied for zoning approval of a used car dealership on property owned by his parents. Although the parents were not listed as applicants, they signed the son's zoning application to indicate their consent to his use of the property. Id. At the public hearing, the father and son both testified that they intended to continue the long-standing, prior use of the property as a used car dealership, with the father supplying the land and the son managing the business. Id., 371–72. The board denied the son's application, and the father and son appealed to the Superior Court. Id., 372. The trial court concluded that neither the father nor the son was aggrieved and, specifically, that the son was not aggrieved because he did not have a legally enforceable interest in the property. Id., 373. The father and son appealed, and the Appellate Court reversed the judgment of the trial court, holding, inter alia, that the informal agreement between the parents and their son had created a sufficient interest in the property to establish the son's aggrievement. Id., 376–77.

We acknowledge that *DiBonaventura* presents a factually different situation than the present case, which does not involve an agreement among family members. Nevertheless, *DiBonaventura* is instructive inasmuch as it stands for the proposition that a landowner and a nonowner developer need not have a written, legally

enforceable agreement when other facts, such as the existence of a credible, oral agreement, establish that the developer has a specific, personal stake in the property.

The court's decision in *Marinelli* v. *Board of Appeal*, 275 Mass. 169, 175 N.E. 479 (1931), also provides some guidance. In *Marinelli*, a fuel company applied for a permit to construct certain structures on land owned by a railroad corporation. Id., 171. The parties orally had agreed that the fuel company would relocate to the subject property, which it would either buy or lease from the railroad. Id., 171–72. After the building commissioner denied the permit, both parties petitioned the board of appeal, which granted a variance allowing the proposed construction. Id. Opponents of the project appealed from the board's decision, claiming, inter alia, that the fuel company did not have sufficient interest in the matter to appear before the board. Id., 173.

The court concluded: "Even though the agreement between the railroad corporation and the fuel company was oral and hence not enforceable at law, there is no reason why their purpose to execute an obligation of honor and fair dealing should not be respected. . . . The fuel company, having no title to the land, nevertheless had such interest therein in view of the attitude of the railroad corporation as entitled it . . . to consideration by the respondent board." Id., 172–73. The court further concluded that, although the oral agreement was not enforceable between the parties, it established a sufficient link between the fuel company and the property to confer subject matter jurisdiction for purposes of the zoning appeal. Id.

We are persuaded by the reasoning of these opinions that an agreement between a landowner and a nonowner developer need not be in writing to establish the developer's aggrievement in a zoning appeal. When the

evidence establishes the existence of an oral agreement and the intent of the parties to abide by that agreement, "a substantial and legitimate interest" in the property exists. *Primerica* v. *Planning & Zoning Commission,* supra, 211 Conn. 93. The evidence in the present case established the existence of such an agreement. Therefore, we conclude that Moutinho was aggrieved by the commission's denial of his applications.

We further conclude that the statute of frauds does not apply in this case. The statute of frauds governs disputes that arise between the parties to a contract; see General Statutes § 52-550;[6] and the present case does not involve a contract dispute between Moutinho and J.R.R.C. Accordingly, we conclude that the trial court improperly determined that Moutinho was not aggrieved by the commission's ruling.

## II

Next, we turn to the plaintiffs' claim that J.R.R.C. has standing to appeal from the commission's decision because it owns the property at issue. Although the trial court found that J.R.R.C. was statutorily aggrieved pursuant to General Statutes § 8-8 (a),[7] it determined

[6] General Statutes § 52-550 provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property; (5) upon any agreement that is not to be performed within one year from the making thereof . . . ."

[7] General Statutes § 8-8 (a) provides in relevant part: "As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board. . . ."

that J.R.R.C. could not participate in this appeal because it was not an applicant before the commission. Under the plain language of § 8-8, however, a person who is statutorily aggrieved may take an appeal. General Statutes § 8-8 (b) ("any person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located"). Accordingly, the trial court, having found that J.R.R.C. was statutorily aggrieved, had no authority to refuse to consider the merits of its appeal.

In support of its alternate ground for affirmance that J.R.R.C. was not aggrieved, the commission reiterates its contentions pertaining to Moutinho's aggrievement. We reject the commission's claim for the reasons previously discussed in this opinion. The commission also claims that a property owner must have been either an applicant before the commission or a partner in the proposed project in order to establish aggrievement, but the authority it cites does not support this proposition. See *RYA Corp.* v. *Planning & Zoning Commission*, 87 Conn. App. 658, 667, 867 A.2d 97 (2005) (owner of affected property aggrieved by denial of subdivision application even though owner, who consented to application, was not listed as applicant on form filed with commission). Indeed, the case law suggests that any such argument would be without merit. See *Bossert Corp.* v. *Norwalk*, 157 Conn. 279, 285, 253 A.2d 39 (1968) (owner of property at issue in zoning appeal always is aggrieved). Accordingly, we conclude that the trial court properly found that J.R.R.C. was aggrieved under § 8-8, but improperly concluded that the finding of aggrievement was not sufficient to allow J.R.R.C. to participate in this appeal. We therefore reverse the trial court's judgment of dismissal.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.