******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PALMER, J., dissenting. Consistent with the findings and conclusion of the trial court, the evidence in the present case clearly and unequivocally establishes that the named plaintiff, Handsome, Inc. (Handsome),[1] was aggrieved by the decision of the defendant, the Planning and Zoning Commission of the Town of Monroe (commission), which granted Handsome a conditional and limited extension to a special exception permit that the commission previously had awarded Handsome. Although Handsome was divested of legal title to the subject property by virtue of a foreclosure action brought by MD Drilling & Blasting, Inc. (MD Drilling), pursuant to which legal title passed to MD Drilling, it is uncontested that, prior to the law day in that action, Handsome, which has been in possession of and operated an excavation business on the property for more than one decade, entered into an agreement with MD Drilling to give Handsome the rights (1) to remain in possession of the property, and to continue its excavation operation and related activities, while it paid its relatively modest debt to MD Drilling, and (2) to regain title to the property upon satisfaction of that debt. Throughout the proceedings in the present case, Handsome has relied on this agreement—with which it has fully complied—in support of its claim of aggrievement, and the trial court expressly found that the agreement supported Handsome's claim that it was aggrieved, even though MD Drilling holds legal title to the property.

In rejecting the trial court's conclusion, the majority refuses to address that court's factual findings with respect to the import of Handsome's agreement with MD Drilling, concluding that the trial court did not actually rely on the agreement as a basis for finding that Handsome was aggrieved, and that Handsome has failed to adequately brief the issue in this court. See footnote 7 of the majority opinion. As I explain more fully hereinafter, both of these conclusions are demonstrably incorrect: The plaintiffs' brief to this court explains *exactly* why the trial court properly relied on the agreement between Handsome and MD Drilling in concluding that Handsome's interest in the subject property is sufficient to demonstrate aggrievement. Moreover, the only plausible reading of the trial court's decision is that the trial court did rely on the agreement in finding that Handsome was aggrieved.[2] Thus, even if it had not briefed the issue, Handsome, as an appellee in this appeal, does not carry the burden of demonstrating the correctness of the trial court's decision; rather, the commission bears the burden of establishing that the decision was incorrect, and it cannot meet that burden.

Instead of considering the issue of aggrievement in light of Handsome's undisputed interest in the property,

as reflected in its agreement with MD Drilling—as the trial court did—the majority concludes that Handsome was not aggrieved solely because it does not have legal title to the property, a fact that neither party disputes and that we repeatedly have concluded is not required to establish aggrievement. In refusing to acknowledge the significance of the agreement between Handsome and MD Drilling for aggrievement purposes, the majority reaches a conclusion that flies in the face of the well settled principle that "[t]he conclusion reached by the [trial] court [on the question of aggrievement] cannot be disturbed on appeal unless the subordinate facts found do not support it." (Internal quotation marks omitted.) *McNally* v. *Zoning Commission*, 225 Conn. 1, 8, 621 A.2d 279 (1993). Contrary to the majority's conclusion, the record fully supports the trial court's finding that Handsome had standing to challenge the commission's decision because it was aggrieved by that decision, even though it does not hold legal title to the property. Indeed, the undisputed facts establish conclusively that Handsome was aggrieved. Consequently, the majority's conclusion is both wrong as a matter of law and manifestly unfair to Handsome, which is entitled to defend the trial court's ruling that the commission's decision concerning Handsome's application for a permit extension was unlawful in certain important respects. Because Handsome was aggrieved by the commission's decision, the majority has improperly deprived Handsome of its right to a decision by this court on the merits of the commission's appeal. I therefore respectfully dissent.[3]

The facts relevant to the trial court's determination that Handsome was aggrieved by the commission's decision are not in dispute, and may be summarized briefly as follows. Todd Cascella and Mona Cascella are the president and secretary, respectively, of Handsome. Todd Cascella transferred the subject property, 125 Garder Road in the town of Monroe, to Handsome by way of a quitclaim deed, which was recorded in the town land records on November 13, 2001. Handsome subsequently applied for a special permit to construct a 20,000 square foot industrial building on the property, which the commission granted subject to an expiration date of May 15, 2008. Prior to 2008, however, the vast majority of Handsome's business involved the sale of sand and gravel excavated from the property to federal, state and locally funded road projects. The actual excavation work was done by another company, Cascella & Son Construction, Inc. (Cascella & Son), which is owned by Todd Cascella.

In March, 2006, MD Drilling brought an action against Handsome and Cascella & Son, seeking to foreclose on a mechanic's lien that it had filed on the property. On December 29, 2009, after a trial, the court, *Mintz, J.*, rendered a judgment of strict foreclosure in favor of MD Drilling. At that time, the court found the fair market

value of the property to be $542,000 and Handsome's debt to MD Drilling to be $27,271.55. The court originally set March 2, 2010, as the law day but subsequently granted a motion for an extension and postponed the law day until June 29, 2010.

In the interim, on April 13, 2010, MD Drilling entered into a written agreement with Handsome and Cascella & Son that allowed Handsome to satisfy the $27,271.55 judgment and to maintain possession and, ultimately, to regain ownership, of the property. Under the agreement, Handsome and Cascella & Son are required to make monthly payments of $500 until the judgment is paid in full. In return, MD Drilling agreed that Handsome may continue its excavation operations on the property and otherwise remain in possession of the property. The agreement further provides that, upon satisfaction of the debt, the judgment of foreclosure will be "null and void"[4] and the property will revert to Handsome. MD Drilling also agreed to file periodic requests to extend the law day as long as Handsome and Cascella & Son were not in default under the agreement. Although it appears from the record in the foreclosure action that the law day was not postponed beyond June 29, 2010, MD Drilling never recorded a certificate of foreclosure in the Monroe land records. The trial court found that Handsome was not in default of the agreement and that Handsome has continued certain operations on the property and maintained equipment there.

As the majority explains, during the pendency of the foreclosure action, Handsome sought an extension of the permit at issue in this appeal. The commission denied the requested extension on April 24, 2008, and the plaintiffs appealed to the Superior Court. On September 9, 2010, the court, *Hon. Howard T. Owens, Jr.*, judge trial referee, sustained the plaintiffs' appeal and ordered the commission to grant the extension. The commission did not appeal from that decision. In October and November, 2010, Handsome submitted written requests to the commission seeking its approval of the permit extension in accordance with the court's decision. The commission finally addressed the matter at its meeting on May 5, 2011. After first entering executive session, the commission eventually reconvened the meeting and granted the extension, albeit with several conditions. Although the commission approved the extension for five years, it made the approval retroactive to March 20, 2008, such that the permit would have expired on March 20, 2013, less than two years from the date on which it was granted.

The plaintiffs again appealed from the commission's decision to the Superior Court. The commission moved to dismiss the appeal, claiming, inter alia, that Handsome was not aggrieved by its decision because it no longer held title to the property in light of the judgment

in MD Drilling's foreclosure action. The plaintiffs objected to the commission's motion to dismiss, arguing, inter alia, that legal title to the property is not required to establish aggrievement and that Handsome's continued possession of the property, together with its agreement with MD Drilling, which the plaintiffs attached as an exhibit to its supporting memorandum of law, was sufficient to establish aggrievement. In response, the commission expressly acknowledged the plaintiffs' contention that the agreement with MD Drilling afforded Handsome standing to maintain the present action as a nonowner. The commission claimed, however, that the trial court could not consider whether Handsome's agreement with MD Drilling provided a basis for establishing aggrievement because the plaintiffs had not alleged those grounds in their complaint; the plaintiffs had alleged, rather, that Handsome was the "owner" of the property. The trial court rejected the commission's argument, and, on September 11, 2012, denied the commission's motion, albeit "without prejudice to raising . . . the issue of aggrievement" at a later date.

After an evidentiary hearing on July 26, 2012, following which the court entertained extensive argument by counsel both on aggrievement and on the merits of the appeal, the trial court issued its memorandum of decision on December 21, 2012,[5] in which it again rejected the commission's argument that Handsome lacked standing to challenge the commission's decision for lack of aggrievement. The court stated that, because MD Drilling has never recorded a certificate of foreclosure in the Monroe land records, Handsome, "as [the] record owner of the property at 125 Garder Road, [was] aggrieved by the [commission's] decision . . . ." The court also observed, however, that the agreement between Handsome and MD Drilling "provides that the [foreclosure] judgment '[would] be null and void when the . . . debt [was] satisfied,' " Handsome "[was] not in default of the agreement, and . . . monthly payments as required by the [agreement] . . . [had] been made." The court further stated that "[t]he fact that [the] agreement [between Handsome and MD Drilling] provide[d] for a mechanism for satisfying the judgment of strict foreclosure [and expressly authorized Handsome to remain on the property], solidifie[d] and enhance[d] Handsome's interest in the property." The court also explained that "[t]he judgment of strict foreclosure [rendered] in favor of MD Drilling . . . [was] not sufficient to deny aggrieved status to Handsome" because "[l]egal title to property is not required in order for a party to satisfy the test for aggrievement."

The court next proceeded to analogize the present case, in which Handsome retains both possession and the right to regain ownership of the property, to other cases in which the party found to be aggrieved did not hold legal title to the property at issue. Citing first to

*Antenucci* v. *Hartford Roman Catholic Diocesan Corp.*, 142 Conn. 349, 114 A.2d 216 (1955), in which this court reiterated the principle that "[t]he party in possession is regarded by the law as the owner, except in a contest with one who has the true title"; (internal quotation marks omitted) id., 355; the trial court then stated as follows: "Aggrievement has been found [when] a party was a contract purchaser; *Shapero* v. *Zoning Board*, 192 Conn. 367, 376 [472 A.2d 345] (1984); had obtained an oral contract to enter into a long-term lease; *Moutinho* v. *Planning & Zoning Commission*, 278 Conn. 660, 669 [899 A.2d 26] (2006); held a leasehold interest; *Michel* v. *Planning & Zoning Commission*, 28 Conn. App. 314, 324–25 [612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824] (1992); or held a security interest in the property. *Goodridge* v. *Zoning Board of Appeals*, 58 Conn. App. 760, 767 [755 A.2d 329, cert. denied, 254 Conn. 930, 761 A.2d 753] (2000)."

Having concluded that Handsome was aggrieved by the commission's decision, the court turned to the merits of the appeal. The court sustained the appeal, concluding both that the commission lacked authority to impose certain additional conditions on the permit as a condition of the extension and that the commission improperly had approved the extension retroactively to March 20, 2008. This appeal by the commission followed.

"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. . . . [I]n order to have standing to bring an administrative appeal, a person must be aggrieved." (Citation omitted; internal quotation marks omitted.) *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 664. As the majority has explained, "[t]he fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Internal quotation marks omitted.) Part II of the majority opinion, quoting *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 394, 941 A.2d 868 (2008). "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 395.

We often have stated, however, that "[s]tanding is not a technical rule intended to keep aggrieved parties

out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . . These two objectives are ordinarily held to have been met when a complainant makes a colorable claim of direct injury [that] he has suffered or is likely to suffer, in an individual or representative capacity. Such a personal stake in the outcome of the controversy . . . provides the requisite assurance of concrete adverseness and diligent advocacy." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 153, 851 A.2d 1113 (2004).

Furthermore, it is well established that a person need not be the owner of the subject property to demonstrate that he or she is aggrieved by the decision of a planning and zoning commission. See, e.g., *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 93–95, 558 A.2d 646 (1989). Rather, a person is aggrieved by such a decision as long as he is "attempt[ing] to vindicate *arguably* protected interests." (Emphasis added; internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, supra, 285 Conn. 393. We previously have explained, moreover, that there is no "precise standard that defines the required interest a nonowner must possess in order to become an aggrieved party [in a zoning appeal] . . . . Rather, we have held that the extent to which a party with an interest in the property other than that of an owner is aggrieved depends [on] the circumstances of each case, because the concept of standing is a practical and functional one designed to ensure that only those parties with a substantial and legitimate interest can appeal . . . ." (Internal quotation marks omitted.) *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 666. Consistent with these principles, cases addressing whether a nonowner is aggrieved by a zoning decision have applied a flexible standard for determining aggrievement to ensure that parties who have an interest in the property at issue can challenge that decision. In such cases, we have recognized that, to establish aggrievement, a party need not have a formal, legally enforceable agreement with the landowner. Instead, we have looked to whether the facts establish that the party claiming aggrievement has "a substantial and legitimate interest in the property . . . ." (Internal quotation marks omitted.) Id., 670.

In *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 660, for example, we concluded that the named plaintiff, Manuel Moutinho, was aggrieved by the defendant planning and zoning commission's denial of his applications to build an asphalt plant on property owned by a third party, notwithstanding the trial court's finding that Moutinho's agreement with

the landowner was legally unenforceable. See id., 662, 668–70. Although Moutinho had no ownership or leasehold interest in the property, he had a long-standing oral agreement with the property owner to enter into a long-term lease if the commission approved his applications to build the asphalt plant. Id., 662–63. After the planning and zoning commission denied the applications, Moutinho appealed to the trial court, which concluded that he was not aggrieved because the oral agreement between him and the owner violated the statute of frauds, General Statutes § 52-550,[6] and, therefore, was unenforceable. Id., 663–64. In reversing the trial court's judgment, we rejected the planning and zoning commission's assertion that the lack of a legally enforceable agreement was fatal to Moutinho's standing to appeal. See id., 668–70. We concluded, rather, that "a landowner and a nonowner developer need not have a written, legally enforceable agreement when other facts, such as the existence of a credible, oral agreement, establish that the developer has a specific, personal stake in the property." Id., 668–69. "When the evidence establishes the existence of an oral agreement and the intent of the parties to abide by that agreement, a substantial and legitimate interest in the property exists." (Internal quotation marks omitted.) Id., 669–70. We explained that it was irrelevant whether the agreement was legally enforceable under § 52-550 because that statute "governs disputes that arise between the parties to a contract . . . and [a zoning appeal] does not involve a contract dispute . . . ." (Citation omitted; footnote omitted.) Id., 670. Because the evidence established that Moutinho and the property owner intended to abide by their agreement, we concluded that Moutinho was aggrieved by the planning and zoning commission's denial of his applications. Id.

In *Moutinho*, we relied on *DiBonaventura* v. *Zoning Board of Appeals*, 24 Conn. App. 369, 588 A.2d 244, cert. denied, 219 Conn. 903, 593 A.2d 129 (1991); see *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 668–69; in which the Appellate Court concluded that the plaintiff Richard DiBonaventura, Jr., was aggrieved by the decision of the defendant zoning board of appeals (board) denying his application for a certificate of approval to operate a used car dealership on property owned by DiBonaventura's father. *DiBonaventura* v. *Zoning Board of Appeals*, supra, 370–72, 376–77. Although DiBonaventura had his father's consent to use the property for the planned car dealership, he had no ownership or leasehold interest in the property. See id., 376. In light of DiBonaventura's lack of a legally enforceable interest in the property, the trial court concluded that he was not aggrieved by the board's decision. Id., 373. The Appellate Court reversed the judgment of the trial court, concluding that DiBonaventura's informal agreement with his father, coupled with the fact that he was to be the owner of the business

operating on the property if the application was approved, was sufficient to establish aggrievement. Id., 376–77. *DiBonaventura* exemplifies the principle that the aggrievement requirement is not intended to keep a party out of court, as long as that party has a specific, personal stake in the matter. "While in a strict sense [DiBonaventura] may not have [had] a legally enforceable interest in the subject property, his interest [was] readily distinguished from a general interest, such as is the concern of all members of the community as a whole." Id., 376. The court further observed that "the trial court's decision that neither [DiBonaventura nor his father was] aggrieved [was] an overly technical application of the test for aggrievement." Id., 377.

In accord with *Moutinho* and *DiBonaventura*, Connecticut courts consistently have applied a flexible and pragmatic standard when called on to decide whether a nonowner's interest in property is sufficient to establish aggrievement. See, e.g., *Primerica* v. *Planning & Zoning Commission*, supra, 211 Conn. 93–95 (plaintiff who sold property during pendency of appeal but leased portion of property from new owner was aggrieved); *RYA Corp.* v. *Planning & Zoning Commission*, 87 Conn. App. 658, 664–67, 672, 867 A.2d 97 (2005) (corporation acting as agent for nonowner developer of land who had agreement with landowner was aggrieved by denial of subdivision application); *Goodridge* v. *Zoning Board of Appeals*, supra, 58 Conn. App. 767 (plaintiff who held $60,000 mortgage on property after selling parcel to owner was aggrieved); *Charles F. Nejame Co.* v. *Zoning Board of Appeals*, Superior Court, judicial district of Danbury, Docket No. CV-01-0342359-S (November 8, 2001) (30 Conn. L. Rptr. 685, 686–87) (plaintiff who used property with landowner's permission and had oral agreement to enter into lease if challenge to cease and desist order was successful was aggrieved). These cases underscore the oft cited principle that "[t]he concept of standing as presented . . . by the question of aggrievement is a practical and functional one designed to [ensure] that only those with a genuine and legitimate interest can [pursue] an [action in court]." (Internal quotation marks omitted.) *Munhall* v. *Inland Wetlands Commission*, 221 Conn. 46, 54–55, 602 A.2d 566 (1992).

In light of the foregoing case law, it is readily apparent that Handsome was aggrieved by the commission's decision. Even though legal title to the property passed to MD Drilling, Handsome retained a valuable interest in the property. The agreement with MD Drilling expressly permits Handsome to retain possession of the property, and it further provides that, upon timely payment of the debt owed to MD Drilling, the judgment of strict foreclosure will be voided and ownership of the property will revert to Handsome.[7] As the trial court found, Handsome was in compliance with the terms of the agreement. In such circumstances, it could be hardly

clearer that Handsome's interest in the property is more than sufficient to satisfy the aggrievement requirement. In fact, in light of the agreement between Handsome and MD Drilling, and the court's finding that Handsome was in compliance with the agreement, Handsome has established aggrievement as a matter of law, such that the trial court could not reasonably have reached any other conclusion.

In rejecting the trial court's resolution of the aggrievement issue, the majority makes no attempt to explain why Handsome's agreement with MD Drilling is insufficient to support the trial court's determination that Handsome was aggrieved. Indeed, the majority fails altogether to acknowledge the long line of cases establishing that legal title to property is not required to establish aggrievement and sidesteps the trial court's express findings concerning Handsome's agreement with MD Drilling and the obvious import of that agreement on the issue of aggrievement. As this court previously has observed, we will not disturb a trial court's conclusion with respect to aggrievement unless it is "unsupported by the subordinate facts or otherwise violate[s] law, logic or reason." (Internal quotation marks omitted.) *Bongiorno Supermarket, Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 539, 833 A.2d 883 (2003). In the present case, because the facts fully support the trial court's finding of aggrievement, and because that finding is sound as a matter of law, the majority has no justification for vacating the trial court's judgment.

Instead of reviewing the trial court's factual findings to determine whether those facts are legally sufficient to establish aggrievement, the majority focuses only on the trial court's reliance on Handsome's status as the record owner of the property and concludes that the present case is essentially indistinguishable from *Southbury* v. *American Builders, Inc.*, 162 Conn. 633, 295 A.2d 566 (1972), a two page per curiam decision in which we summarily dismissed the appeal of the parties claiming to be aggrieved because they themselves had "*acknowledged* that they *no longer had any interest in the premises* in question because of a foreclosure subsequent to [the] appeal." (Emphasis added.) Id., 634. As the majority acknowledges, however, *Southbury* stands only for the proposition that a party may not maintain an appeal if its "*appealable interest* in a controversy" is lost after judgment. (Emphasis added.) Id.; see footnote 6 of the majority opinion. In the present case, although Handsome was divested of its *ownership* interest in the property, it did not lose its *appealable* interest because, as the trial court found, Handsome was aggrieved by virtue of its ongoing possession of the property and its right to reacquire ownership of the property from MD Drilling under the agreement between Handsome and MD Drilling. Only by failing to acknowledge that legal title is not required to establish

aggrievement and by failing to recognize the significance of the radically different facts in the present case can the majority assert that this case is no different from *Southbury*.

The majority seeks to justify its refusal to address the trial court's finding that Handsome's agreement with MD Drilling creates an interest in the property sufficient to establish aggrievement by claiming that Handsome's possessory interest in the premises as a result of the agreement was not a basis of the trial court's decision and that the plaintiffs did not adequately brief the issue on appeal. The majority specifically asserts that the argument is made "in a mere three lines of the plaintiffs' appellate brief and is unaccompanied by any supporting analysis or citation to relevant legal authority" and that the plaintiffs failed to make the argument "as an alternative ground for aggrievement." Footnote 7 of the majority opinion. Both of these contentions are baseless. First, it is clear that the trial court relied on Handsome's agreement with MD Drilling in support of its aggrievement determination. Because the commission, as the appellant, is challenging that determination, we necessarily must address the trial court's findings with respect to the agreement, regardless of the adequacy of the plaintiffs' briefing of the issue. Second, even if Handsome could not prevail unless the plaintiffs adequately addressed the issue of the trial court's reliance on the agreement between Handsome and MD Drilling, the plaintiffs' briefing with respect to the significance of Handsome's agreement with MD Drilling is perfectly sufficient for appellate review. I address these points in turn.

With respect to the majority's contention that the trial court did not rely on Handsome's agreement with MD Drilling as a basis for finding that Handsome was aggrieved, any fair reading of the trial court's decision belies such a claim. Thus, the majority's claim that Handsome cannot prevail on appeal because the plaintiffs have not adequately briefed the issue of why Handsome's agreement with MD Drilling supports the trial court's aggrievement determination improperly places the burden on the plaintiffs to prove the correctness of the trial court's ruling. It is axiomatic that "[t]he burden rests [on] the appellant to show that there was error in the judgment from which the appeal is taken . . . ." *Schwarzschild* v. *Martin*, 191 Conn. 316, 326, 464 A.2d 774 (1983). As the appellant in the present appeal, the commission bears the burden of demonstrating that the trial court's conclusion regarding aggrievement was factually or legally incorrect. It is apparent that the commission cannot meet that burden.[8] As I discussed previously, the trial court determined that "[t]he judgment of strict foreclosure [rendered] in favor of MD Drilling . . . [was] not sufficient to deny aggrieved status to Handsome" because "[l]egal title to property is not [required] in order for a party to satisfy

the test for aggrievement." In making this determination, the trial court expressly relied on Handsome's written agreement with MD Drilling, which the plaintiffs had introduced as an exhibit at the evidentiary hearing on the matter. The trial court also found that Handsome was not in default of its obligations under the agreement. Finally, in reaching its conclusion, the court relied on several cases in which this court concluded that legal title to the property is not required to establish aggrievement. In light of the clarity of the trial court's reasoning in support of its conclusion that Handsome's agreement with MD Drilling provides an interest sufficient to establish aggrievement, the majority's refusal to address this finding on the ground that it was not adequately briefed by Handsome—and to vacate the judgment of the trial court without considering the merits of its decision—is simply untenable.[9] Furthermore, even if Handsome could be deemed to have waived its right to prevail on appeal by virtue of the plaintiffs' failure to adequately brief the import of Handsome's agreement with MD Drilling on the issue of aggrievement, the majority's assertion that the plaintiffs did not adequately brief that issue is flatly contradicted by the record. The plaintiffs explain in their brief to this court that Handsome "is still in possession of the premises," as permitted by the agreement, and that "Handsome clearly retains a valuable equitable interest in the premises as a result of its agreement with MD Drilling to 'void' the foreclosure upon completion of [the] payment arrangement." Consistent with the foregoing points, the plaintiffs further explain that "a judgment in Handsome's favor would be of great benefit to Handsome because the huge financial burden the commission has attempted to impose will be lifted and Handsome will have five years to complete the construction of the building [to be erected on the property] and . . . would be able to sell excess earth materials to contractors with state and local governments who cannot purchase materials presently from Handsome because Handsome does not have a valid permit in place." In addition, Handsome seeks to have this court affirm the judgment of the trial court in all respects, including, of course, its finding of aggrievement, and so we necessarily must evaluate the reasoning and conclusion of that court, as reflected in its memorandum of decision, in reviewing the parties' claims concerning aggrievement. Notably, *all* of the cases relevant to the issue are set forth in the trial court's memorandum of decision.

Finally, at oral argument before this court, the plaintiffs' counsel addressed the aggrievement issue extensively in response to questioning from panel members. In his detailed responses, counsel explained, once again, that property ownership is not a necessary prerequisite to aggrievement and, further, that Handsome was aggrieved by virtue of its agreement with MD Drilling under which it retains a possessory interest in, and

the right to regain title to, the property. Counsel for the commission did not challenge these arguments but maintained, rather, that, for pleading purposes, the plaintiffs had relied solely on Handsome's status as the record owner of the property. That is no answer to Handsome's claim of aggrievement in view of the fact that the commission had ample notice of the plaintiffs' subsequent reliance on Handsome's agreement with MD Drilling. Indeed, the commission makes no claim that it was prejudiced in any way by the trial court's consideration of the agreement for purposes of its aggrievement determination.[10]

It bears emphasis, moreover, that the plaintiffs consistently have argued both that Handsome is the record owner of the property *and* that, in any event, ownership of the property is not required to establish aggrievement. The plaintiffs first raised this latter argument in their objection to the commission's pretrial motion to dismiss for lack of aggrievement. At that time, the plaintiffs expressly argued that "[p]roof of aggrievement does not require proof of an ownership interest in the premises." In support of this claim, the plaintiffs cited no fewer than seven cases, including this court's decision in *Moutinho*, arguing, inter alia, that "[t]he [commission's] entire argument is premised on the false assumption that the appellant must be the owner in fee simple of the property involved in the decision in order to be able to prove aggrievement. Nothing could be further from the truth." Finally, the plaintiffs relied on Handsome's agreement with MD Drilling to demonstrate why, in the present case, ownership is not a necessary prerequisite to aggrievement.[11] Indeed, as I previously noted, the commission, in its response to the plaintiffs' objection to the motion to dismiss, expressly acknowledged their contention that Handsome's agreement with MD Drilling afforded Handsome standing to maintain the present action as a nonowner. As the foregoing amply demonstrates, the majority is incorrect in asserting that the commission is entitled to reversal of the trial court's judgment in favor of the plaintiffs on the ground that Handsome has failed to adequately defend the trial court's finding that its agreement with MD Drilling creates an interest sufficient to establish aggrievement.[12]

Because the majority addresses only whether Handsome was aggrieved as the owner of the property, it refuses to address Handsome's argument that its interest in the property would be harmed by the conditions imposed in connection with the granting of the permit extension, instead offering the conclusory assertion that "[w]e need not address this claim . . . in light of our previous conclusion that Handsome had no ownership interest in the property." Text accompanying footnote 7 of the majority opinion. For the reasons that I have explained, and contrary to the conclusion of the majority, Handsome's interest in the property is more

than sufficient for standing purposes. Because the additional conditions imposed by the commission in connection with its granting of the permit extension pose a significant barrier to Handsome's continued use of the property, in accordance with its agreement with MD Drilling, Handsome is harmed by the commission's decision to impose those additional conditions, and Handsome therefore was clearly aggrieved by the commission's decision.

In sum, the majority's conclusion that Handsome was not aggrieved effectively deprives Handsome of its right to challenge a decision that may very well force it out of business—and one that the trial court already has found to be unlawful—without any legal or factual basis for denying Handsome that right.[13] Our cases are clear that the purpose of the aggrievement requirement is not to close the courthouse door to a party whose rights are substantially affected by a zoning decision but, rather, to ensure that only those parties who have a genuine and legitimate interest in the decision can challenge it in court. Handsome most certainly has "a personal stake in the outcome of the controversy . . . [that] provides the requisite assurance of concrete adverseness and diligent advocacy"; (internal quotation marks omitted) *Broadnax* v. *New Haven*, supra, 270 Conn. 153; which is all that is required to establish aggrievement. Consequently, the trial court correctly determined that Handsome was aggrieved by the commission's decision, and, therefore, this court is obligated to consider and decide the merits of the commission's appeal.[14] Accordingly, I dissent.

[1] Todd Cascella, Handsome's president, and Mona Cascella, Handsome's secretary, also are plaintiffs in the present case.

[2] As I explain more fully hereinafter, the trial court explained that Handsome was aggrieved by the commission's decision due to the fact that, because MD Drilling has never filed a certificate of foreclosure in the land records, Handsome is the record owner of the property. The majority rejects this determination by the trial court because mere "record" ownership of property, without more, is insufficient to establish aggrievement, a point with which I generally agree. The majority, however, ends its analysis there and refuses to address the trial court's further finding that Handsome was aggrieved in light of its agreement with MD Drilling giving Handsome the right to continued possession of the property, as well as the right to regain ownership of the property, as long as Handsome satisfies its debt to MD Drilling.

[3] Because the evidence establishes that Handsome was aggrieved by the commission's decision, I do not address the majority's conclusion that Todd Cascella and Mona Cascella, who also are plaintiffs; see footnote 1 of this opinion; were not aggrieved in their individual capacities. See, e.g., *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 529 n.3, 600 A.2d 757 (1991) (if one plaintiff is found to be aggrieved by decision of zoning board or commission, reviewing court need not determine whether other plaintiffs also are aggrieved).

[4] Although the trial court found that the agreement provided that the *foreclosure* judgment would be null and void upon payment of the debt, the language of the agreement suggests a different meaning. Specifically, the agreement provides that Handsome and Cascella & Son "stipulate to a judgment of possession and an order of ejectment" in favor of MD Drilling and that the "stipulation shall be held in escrow" as long as Handsome and Cascella & Son are not in default of the agreement, and that "[s]aid judgment and order will be null and void when the . . . debt is satisfied." Thus, it

appears that the parties intended that payment of the debt would nullify the judgment of possession and order of ejectment, not the judgment of strict foreclosure. Nevertheless, because this discrepancy does not alter my conclusion that Handsome was aggrieved, and because neither party challenges the trial court's finding that the agreement was intended to nullify the judgment of strict foreclosure, for purposes of this appeal, I presume that the trial court's finding regarding the intent of the agreement was correct. Moreover, the intent of the parties to the agreement is clear.

[5] Prior thereto, on December 10, 2012, the court once again heard argument from counsel on the issue of aggrievement.

[6] General Statutes § 52-550 provides in relevant part: "(a) No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property; [or] (5) upon any agreement that is not to be performed within one year from the making thereof . . . ."

[7] The commission acknowledged at oral argument before this court that, pursuant to the agreement, Handsome has the right to regain title to the property upon satisfaction of its debt to MD Drilling.

[8] To the extent that the majority suggests that Handsome was required to brief the issue of its agreement with MD Drilling as an alternative ground for establishing aggrievement, that contention is incorrect. Simply stated, Handsome was not required to treat that agreement as an alternative ground for establishing aggrievement because the trial court relied expressly on that agreement in concluding that Handsome was aggrieved.

[9] The majority insists that the trial court did not rely on Handsome's agreement with MD Drilling in support of its conclusion that Handsome's interest in the property was sufficient to establish aggrievement but, rather, that the court concluded only that Handsome was aggrieved as the record owner of the property, and that the agreement merely "reinforced" that record ownership interest. Footnote 7 of the majority opinion. This restatement of the trial court's decision is not accurate, primarily because it simply makes no sense to say that a possessory interest in property, coupled with the right to regain full ownership of that property, somehow reinforces a party's record ownership of the property. It is plain from the trial court's decision that the court did rely on the agreement to support its conclusion that Handsome was aggrieved. After concluding that Handsome was aggrieved due to its status as the record owner of the property, the court went on to state that the agreement "solidifie[d] and enhance[d] Handsome's interest in the property." Immediately following that sentence, the court underscored its reliance on the agreement by noting that "[t]he judgment of strict foreclosure [rendered] in favor of MD Drilling . . . [was] not sufficient to deny aggrieved status to Handsome . . . . Legal title to property is not required in order for a party to satisfy the test for aggrievement." It could hardly be clearer that, as the trial court expressly found, Handsome's agreement with MD Drilling strengthened and augmented Handsome's claim of an interest in the property—above and beyond its record ownership—sufficient to establish aggrievement.

Moreover, even if the trial court's decision could be characterized as ambiguous in some way—and that would not be a fair characterization— it is axiomatic that we read "an ambiguous trial court record so as to support, rather than contradict, its judgment." (Internal quotation marks omitted.) *Walton* v. *New Hartford*, 223 Conn. 155, 164, 612 A.2d 1153 (1992). This is especially true when, as in the present case, the trial court's underlying factual findings unquestionably establish that Handsome was aggrieved by the commission's decision. Indeed, as I noted previously, if the trial court had concluded that Handsome's agreement with MD Drilling was insufficient to establish aggrievement, we would be required to reject that conclusion as clearly contrary to law. See *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 669–70 (rejecting trial court's conclusion that oral agreement between parties was insufficient to establish aggrievement).

[10] Thus, although, as I indicated previously, this court has observed that a party must plead and prove facts establishing aggrievement; see, e.g., *Moutinho* v. *Planning & Zoning Commission*, supra, 278 Conn. 664; the purpose of that requirement is merely to ensure that the court is not called on to decide a case in which the party seeking relief does not have standing to obtain it; see id., 664–65; because, unless that party has standing, the court cannot decide the case due to a lack of subject matter jurisdiction. See, e.g., *One Country, LLC* v. *Johnson*, 314 Conn. 288, 297, 101 A.3d 933

(2014). Notably, the majority does not claim otherwise. In the present case, it is perfectly clear that, as the trial court found, Handsome had standing, in light of its agreement with MD Drilling, to challenge the adverse decision of the commission, and it is equally clear that Handsome continues to have standing, in light of that agreement, to defend this appeal.

[11] The plaintiffs' objection to the commission's motion to dismiss contains the following statement with respect to Handsome's agreement with MD Drilling: "In response to the [commission's] claims [seeking dismissal of the plaintiffs' appeal to the Superior Court, the plaintiffs submit] in conjunction with this objection [to the commission's motion], as exhibit A, a copy of a settlement agreement between MD Drilling . . . and Handsome . . . dated April 13, 2010, [in which] Handsome . . . agreed to pay MD Drilling [$500] per month until the debt is paid in full, and the parties agreed that Handsome . . . retained possession of 125 Garder Road and that 'said judgment and order shall be null and void when the . . . debt is satisfied.' The agreement also obligated MD Drilling to periodically request extensions of the law day so long as Handsome . . . was not in default of its payment agreement. There is no dispute that Handsome . . . has continued in possession of the property to this date." The fact that the commission clearly understood that Handsome's claim of aggrievement was based on its possessory and potential future ownership of the property is reflected in the commission's reply memorandum of law to the plaintiffs' objection, in which it characterizes Handsome as "asserting that [it] had entered into an agreement with MD [Drilling] which [it] contend[s] grants [it] standing to maintain this action *as a nonowner*." (Emphasis in original.)

[12] The majority apparently contends that the plaintiffs somehow abandoned or waived this claim by failing to raise it again following the evidentiary hearing on the commission's motion to dismiss. This contention is wholly without merit and utterly unfair to Handsome. As the majority acknowledges, the plaintiffs clearly and unequivocally raised the claim in their pretrial objection to the commission's motion to dismiss. Thereafter, the court held a brief evidentiary hearing at which the plaintiffs introduced Handsome's agreement with MD Drilling through Todd Cascella, who also testified that Handsome was in compliance with that agreement, to substantiate the standing claim that they had raised in their objection to the commission's motion to dismiss. Indeed, there would have been no reason for the plaintiffs to adduce such evidence if they were not relying on it for purposes of establishing standing. As the plaintiffs' counsel explained at oral argument before this court, the plaintiffs simply did not address the issue of standing *at all* in their posttrial brief—they instead addressed other issues that also needed to be resolved at that time—because they had nothing to add to their pretrial brief. Moreover, the record is clear that both the commission and the trial court fully recognized that the plaintiffs were relying on Handsome's possessory interest under Handsome's agreement with MD Drilling to establish standing. With respect to the commission, its counsel expressly argued, immediately following the evidentiary portion of the hearing, that, contrary to Handsome's claim, the agreement was not sufficient to establish Handsome's aggrievement. Of course, the trial court also recognized that the plaintiffs were relying on the agreement in support of their claim of aggrievement: the court pressed counsel for the commission on this point at the hearing and then rejected counsel's contention in finding that Handsome was, in fact, aggrieved. In such circumstances, it is nothing short of a miscarriage of justice to conclude that the plaintiffs failed to preserve the issue of Handsome's aggrievement when they thoroughly briefed the issue in the trial court and then supplemented their brief with the necessary evidence, namely, Handsome's agreement with MD Drilling and Handsome's continued compliance with that agreement.

[13] Although the plaintiffs successfully challenged the commission's decision in the trial court, under the majority's holding, Handsome lacks standing to defend this appeal because it no longer has an interest in the subject property. In such circumstances, the remedy is to vacate the judgment of the trial court and to remand the case to that court with direction to dismiss Handsome's appeal from the commission's decision. Thus, under the majority's decision, the trial court's ruling sustaining the plaintiffs' appeal is null and void.

[14] Compounding the unfairness of the majority's decision, the commission conceded in the trial court that its retroactive approval of the permit extension was contrary to law, and it has not challenged the trial court's ruling with respect to that issue. Nevertheless, because the majority concludes that Handsome does not have standing to challenge the commission's deci-

sion, the commission's unlawful retroactive approval of the extension will go unremedied.

————————————————————